FREEMAN v. ROTHSCHILD et al.

(Supreme Court, Appellate Division, First Department. March 9, 1900.)

CONTRACTS—PERFORMANCE—RESCISSION.
    A contract to furnish and install the electrical plant and apparatus for lighting a building in process of erection, according to specifications which could be and were altered by the owner, mentioned no time for the completion of the work, but provided that, if the contractor at any time neglected to supply a sufficiency of materials and workmen, the owner should have the power to provide materials and workmen after three days' notice in writing being given to finish the work, and the expense should be deducted from the amount of the contract. Though there were delays, and the owner made objections to the work, he insisted on the contractor continuing the work until the day he served such three days' notice, and expelled the contractor from the work. With the work done after that date, in connection with that done by the contractor theretofore, the plant

was in operation four days later. *Held*, that there was a substantial performance of the contract up to the stage at which the contractor was compelled to leave it, and he could recover the unpaid contract price, less such sums as he would have been obliged to expend for the uncompleted part of the contract.

Appeal from judgment on report of referee.

Action by Edward Freeman against Jacob Rothschild, impleaded with Charles L. Eidlitz and others. From a judgment entered on a report of a referee, in favor of Eidlitz and against defendant Rothschild, the latter appeals. Modified.

Argued before VAN BRUNT, P. J., and BARRETT, McLAUGHLIN, PATTERSON, and O'BRIEN, JJ.

John W. Fiske, for appellants.

Ernest F. Eidlitz, for respondent.

PATTERSON, J.   This action was brought to foreclose a mechanic's lien filed by the plaintiff upon property situate in the city of New York, and known as the "Hotel Majestic." The defendant Rothschild was the owner of the property. Associated with him as a defendant is Charles L. Eidlitz, who had also filed a lien against the same property. The defendant Eidlitz, in his answer, set up his lien and claimed the right to enforce it. Rothschild resisted that lien, and an issue was duly framed between him and Eidlitz by cross service of their answers. That issue was separately tried, and a referee, to whom the action was referred, reported in favor of Eidlitz. From the judgment entered upon the decision of the referee, the defendant Rothschild appeals, and the case is before us as one simply involving a contest between Rothschild as owner and Eidlitz as lienor.

The defendant Eidlitz entered into a written contract with Rothschild to furnish and put up in the Hotel Majestic all the electrical plant and apparatus for lighting that hotel. The agreement was made on the 25th day of October, 1893. No time is mentioned in the contract for the completion of the work. It provided that Eidlitz should well and sufficiently erect and finish the electrical light plant in the building known as the "Hotel Majestic," in the city of New York, agreeably to drawings and specifications made by a supervising engineer and signed by the parties,—such work to be done in a good, workmanlike, and substantial manner, to the satisfaction and under the direction of the supervising engineer. The compensation to be paid to Eidlitz was the sum of $35,500,—75 per cent. of the amount to be paid in a manner provided for in the contract, and "the remaining 25 per cent. to be paid when the entire plant shall have been completed, tested, and lighted to the satisfaction of the owner and supervising engineer." Specifications and drawings were annexed to the contract and signed by the parties. The contract also provided that, should the owner at any time during the progress of the building request any alteration, deviation, omission, or omissions from the contract, he should be at liberty to do so, and the same should in no way affect or make void the contract, but be added to or be deducted from the amount of the contract as the case might be, on a fair and reasonable valuation. It was then stipulated as follows:

"Should the contractor, at any time during the progress of the said work, refuse or neglect to supply a sufficiency of materials or workmen, the owner shall have the power to provide materials and workmen, after three days' notice in writing being given to finish the said work, and the expense should be deducted from the amount of the contract."

And also:

"Should any dispute arise respecting the true construction or meaning of the drawings or specifications, the same shall be decided by the superintending engineer, and his decision shall be final."

A supervising engineer was employed, but by subsequent agreement between the parties he was dismissed during the early stages of the work, and the provisions relating to a "supervising engineer" became inoperative. Payments were made under the 75 per cent. provision of the contract from time to time; such payments amounting to the sum of $25,550. On the 28th of September, 1894, Eidlitz filed a lien for a balance he claimed of $9,950 unpaid on the contract. The lien also included an item of $529 as the reasonable value of extra work done and materials furnished, not included in the contract. Rothschild, in his answer, denied any liability upon the Eidlitz contract, and set up that Eidlitz failed to perform it, and that he did not do the work provided for in the contract in a workmanlike and substantial manner, or in accordance with the plans and specifications annexed to the agreement, and that the materials furnished were not of proper quality, and that by reason of delays and insufficient performance he was obliged to avail himself of the privilege reserved to him under that provision of the contract which authorized him, on three days' notice in writing, to finish the work at the expense of Eidlitz, the contractor.

It is shown in the proofs that Rothschild took possession of the work on the 27th of September, 1894, and excluded Eidlitz from the premises. It is also in the proofs that, with the work done by Rothschild after the 27th of September, in connection with all that had been done by Eidlitz theretofore, the electric lighting plant of the hotel was in operation on the 1st of October, 1894. As said before, no time was fixed at which the work undertaken by Eidlitz should be completed, nor was there any time fixed in the contract at which it should be begun. It is evident, however, that it was intended that the work of putting in this electric plant should keep pace in some way with the general construction of the building. Nothing was done in the way of performance of the Eidlitz contract until December, 1893, and from that time differences between Mr. Rothschild and Eidlitz arose respecting the manner in which the work should be done. It seems that until February, 1894, Davis, the supervising engineer, insisted upon a literal adherence to the terms of the specifications, and that Eidlitz was strenuous in asserting that those specifications were in many ways impracticable, and proper and sufficient work could not be done under them. In February, 1894, Davis was dismissed, and an arrangement seems to have been made by which Eidlitz was to be subjected to no supervision, except that of Rothschild himself; and it was agreed between the parties that omissions from the specifications might be had, but that an equiva-

lent should be supplied in other parts of the work, or in apparatus or details of work, in connection with the electrical plant.

It is needless to refer specifically to the details of the multitude of subjects of difference or discussion between the owner and the contractor during the months that elapsed between the commencement of the work and the final expulsion of the contractor from it. The effect, however, of all that was done, is that Eidlitz continued in the performance of the contract up to the month of September, 1894, not only with the assent of the owner, but under his urgency to go on and complete the work. The real question involved in the controversy upon this branch of the case is whether Rothschild rightfully discharged Eidlitz from the work on the 27th of September, 1894. The referee has found that the discharge was wrongful; and in that connection he has substantially found that the objections taken by Mr. Rothschild to the work as it progressed were waived as grounds for terminating the contract, and that he was in effect insisting upon Eidlitz continuing the work. That there were delays, and serious ones, is quite apparent. Some of them were caused by Mr. Rothschild himself, others by necessary departures from the specifications, and still others by matters which seem to have been beyond the control of either Rothschild or Eidlitz. However this may be, and to whatever cause those delays may be attributable, it is perfectly plain, from the correspondence between Rothschild and the contractor, that the former was all along holding the latter to the performance of the contract, and that after the 21st of September, 1894, when Rothschild sought to avail himself of that clause which referred to the three-days notice, he still recognized the right of Eidlitz to continue the work, and insisted upon its continuance, and thus virtually withdrew any notice he may have given. As late as August 29, 1894, changes very important and material were made in the arrangement of the switchboards, and Rothschild notified Eidlitz that he intended using the electric light throughout the building on September 15th, and that he would hold Eidlitz in damages if the contract were not completed at that time. The work continued, and on September 20th Rothschild wrote that he was then ready to light several floors of the building, and that he discovered that the work was not far enough advanced as to engines and switchboards to give light that he wanted immediately,—not for lighting the whole building, but apparently to be used by workmen during the completion of the building. Under the contract, the contractor was not obliged to complete the work, either for a partial test or for lighting only a portion of the building. Again, on September 21st, Rothschild wrote as to the condition of the wires, and their being grounded, and informed Eidlitz that about 60 leases were to begin at the latter part of September and on October 1st, and that if light were not provided, and he was required to cancel those leases, he would hold Eidlitz responsible. Eidlitz, in answer to these letters, gave reasons why the electrical apparatus could not be run at that time, and nothing further appears to have taken place between the parties until September 24th, when a conversation was had between Rothschild and

Eidlitz, in respect of which there is a conflict between them; but Eidlitz was still continuing the work, and did continue until he was excluded on the 27th, as above stated.

Whether Rothschild had the right to take the work into his own hands, and finish it at the expense of Eidlitz, depended altogether upon his having a just and sufficient reason for availing himself of the provision of the contract which authorized him, under the conditions above mentioned, to complete the work at the expense of Eidlitz. Technically, he seems to have lost that right by waiver; but, as the referee found, the condition of the work on the 27th of September was such that the contract was substantially performed by Eidlitz. The referee, in his opinion, has shown that but little remained to be done; and he has also shown, from his references to the testimony, that the delays or impediments to the progress of the work that arose during the few weeks preceding September 27th were almost all from causes for which the contractor was not responsible. That the contract was substantially performed would seem to follow almost necessarily from the fact that within four days after Eidlitz was excluded from the building the owner proceeded to have the apparatus and plant completed, so that the building was then fully lighted. The findings of the referee, authorized by the evidence, are, therefore, that Rothschild was in the wrong in excluding Eidlitz from further performance of the contract; that, when Eidlitz was thus excluded, he had substantially performed the contract, with the exception of such things necessary to light the building as could have been supplied within four days from the time of the discharge; and the conclusion follows that, from these circumstances, Eidlitz was entitled to recover the contract price unpaid, less such sums as he would have been obliged to expend for labor and materials in performing the uncompleted part of the contract. An examination of the evidence satisfies us that, under all the circumstances, there was substantial performance of the contract up to the stage at which Eidlitz was compelled to leave it.

In addition to the allowance of the contract price, less the deduction mentioned, the referee allowed a certain sum for extra work, as above stated. That allowance was properly made under the evidence. In his answer, Rothschild set up a counterclaim, and sought to recover some $10,000 for work and material which he alleged was rendered necessary to make effective the electrical apparatus and plant, and required in consequence of the defects and insufficiencies of Eidlitz's work. The referee was justified in rejecting that claim. He has further found, and properly so, that Rothschild should be allowed certain items of offset to the Eidlitz claim, and those are for work and materials not furnished, and for replacing work defectively done. Those items aggregate $1,147.20, and are enumerated in the opinion of the referee. There are other items of offset claimed by Rothschild which should have been allowed, and it is urged that the referee has failed to pass at all upon much of the testimony which established the right of Rothschild to these offsets. We have not foregone the labor of attempting to analyze

the immense mass of testimony relating to Rothschild's disbursements in completing the work of the Eidlitz contract. The referee has disallowed them, evidently, because he thought they were not properly chargeable against Mr. Eidlitz. On reading the testimony respecting those items, we think that some of them should have been allowed, as, for instance, the item for $90 for repairs to damaged feeders. Mr. Eidlitz admitted his liability to repair those feeders, and there was evidence to show that the labor required to repair them would be worth the sum of $90. The work of making connections would also have required the labor of eight men for two days, and there is some proof to show that the value of such labor would have been about $48. There is also an item of $39.60 which should have been allowed for lining cut-out boxes, and there is an item of $332 for outlets in the machinery and boilers in the cellar. We cannot find in the evidence that the items above referred to were not required, or that something else was substituted for them under the modified arrangement that has been referred to respecting a change in the specifications. We think the referee was right in rejecting the item for the cost of the test run. It seems that the referee has allowed as an item of labor the sum of $171, and therefore there remains an amount of $338.60 which should have been deducted from the amount awarded to Eidlitz.

The judgment in favor of Eidlitz should be reduced by $338.60, the additional items of offset which should have been allowed as above mentioned, and, as thus modified, affirmed, without costs to either party of this appeal. All concur.